Keating, J.
Henry and Leo Rubinstein are distant relatives. For some years they had successfully operated a number of joint enterprises. In July, 1965 they owned an equal number of shares in two corporations, one of which operated a grocery business on Third Avenue in New York City (“Premium”) and the other a delicatessen business on First Avenue (“ Kips Bay ”). In addition, the cousins had equal interests in two other corporations. One held title to real property on which the Kips Bay delicatessen was conducted and the other to the adjoining parcel.
Prior to July, 1965 differences arose. The cousins decided on a parting of the ways. On July 20,1965, with each party represented by his own counsel, an agreement was signed. Its basic outline was this. Each business was valued at $70,000. Henry was to choose immediately between the two businesses. Leo would get the other. The agreement also provided that whoever took the Kips Bay delicatessen would also take the realty located there. Although the agreement established a procedure by which the realty was to be valued, it appears that the realty played an insignificant part in the negotiations.
At the time the agreement was executed, Henry and Leo deposited $5,000 with their respective lawyers. The agreement stated this sum would ‘ ‘ be held in escrow by each respective attorney, to be applied towards the payment that each of the parties may have to make to the other party upon the closing of the above transaction.” Any surplus, after the necessary adjustments, was to be returned to Henry and Leo at the time *296 of the closing. These two provisions, which appear in paragraph numbered “8”, are then followed by this clause: “In the event that either of the parties hereto shall default or refuse to consummate this transaction, then the aforesaid $5,000.00 deposited by such defaulting party shall be forfeited as liquidated damages and such sum shall be paid by the escrowee thereof to the other party.”
The day after the execution of the agreement Henry sent a letter to Leo’s lawyer in which he elected to take the Kips Bay property. The agreement provided that the closing would take place within one week. Apparently, disputes arose as to how various details of the transaction should be worked out, and in October of 1965 the deal still had not been consummated. At this point, Henry instituted this suit in Supreme Court, New York County, for specific performance. An answer was interposed by the defendant in which he counterclaimed for specific performance, also alleging the lack of an adequate remedy at law.
Leo thereafter had a complete change of mind. He changed lawyers and in September, 1966 moved to strike the complaint from the equity calendar on the ground that the quoted provision of the agreement relegated Henry to an action at law for $5,000. Henry cross-moved for summary judgment for specific performance. Leo then moved for leave to. serve a proposed amended answer to remove the counterclaim for equitable relief.
Special Term found that it “ is clear that the defendant does not desire to go through with the contract ”, and ruled that plaintiff was entitled to summary judgment, but held that the clause quoted above constituted not only a liquidated damages provision but, as a matter of law, it constituted the sole relief to which plaintiff was entitled. The correctness of this holding is the principal legal issue presented by this appeal.
On appeal to the Appellate Division by the plaintiff, the order entered upon Special Term’s decision was affirmed by a closely divided court. Two members of the majority agreed with Special Term’s reasoning, but also were of the opinion that, as a matter of law, the agreement was incapable of being enforced by a decree in equity. In their view, there were too many ‘ ‘ open ends to the contract ” and the agreement appeared to be “ preliminary in nature ’ ’. The dissenters rejected both propositions, holding that the provision for monetary damages in the sum of *297 $5,000 was not intended to be an alternative to specific performance and that plaintiff did not have an adequate remedy at law. Moreover, “ [S]pecific performance would not here be ‘ inconsistent with the express terms of the contract ’ (see, 55 N. Y. Jur., Specific Performance, § 11)
The Justice who cast the deciding vote was of the opinion that the provision in the contract was intended to cover all damages which might be sustained upon a failure or refusal to perform and it precluded the granting of specific performance by providing for a forfeiture of $5,000. Otherwise, on the question as to the appropriateness of equitable relief, he would have remanded for a trial to determine whether, under all the circumstances, the grant of the remedy of specific performance should be granted.
We conclude that the pertinent clause does not preclude the relief of specific performance, that plaintiff does not have an adequate remedy at law and that the agreement is enforcible by a court of equity. Therefore, plaintiff’s motion for summary judgment for specific performance should have been granted.
We may immediately dispose of a preliminary argument, namely, that plaintiff has an adequate remedy at law. On its face the principal aim of this agreement was to sever the parties’ relationship and to enable each party to own completely, separately and without interference by the other one half the joint business. It is evident that this result cannot be achieved by a damage award, and respondent does not seriously argue that plaintiff has an adequate remedy at law.
We turn then to the main question presented by this appeal, whether the agreement, by its terms or in light of surrounding circumstances precludes specific performance. Nothing in the language of the contract explicitly states that the liquidated damages provision was to be plaintiff’s sole and exclusive remedy, but both Special Term and the Appellate Division majority found the liquidated damages provision itself precluded specific performance. This is made clear by the following language in the prevailing opinion: ‘1 Properly considered, clause Eight in the contract relating to the- $5,000 was nothing more than an option, affording the plaintiff a choice not to go forward, if he was willing to forfeit $5,000. ’ ’
In relying on the liquidated damages clause alone the .majority was clearly in error. The law is now well settled that a liqui *298 dated damages provision will not in and of itself be construed as barring the remedy of specific performance (Phoenix Ins. Co. v. Continental Ins. Co., 87 N. Y. 400; Diamond Match Co. v. Roeber, 106 N. Y. 473; see, also, Wirth S Hamid Fair Booking v. Wirth, 265 N. Y. 214; Restatement, Contracts, § 378). For there to be a complete bar to equitable relief there must be something more, such as explicit language in the contract that the liquidated damages provision was to be the sole remedy. Such was the case in Artstrong Homes v. Vasa (23 Misc 2d 608) cited by the majority below.
In Wirth & Hamid Fair Booking v. Wirth (supra), Judge Lehman, writing for the court, pointed out that this rule was not always clear. He wrote (265 N. Y., supra, p. 224): “ Indeed there was, at one time, doubt whether a party might invoke the equitable remedy of injunction against a breach of a contract where the parties had stipulated the amount of damages which should be paid upon such breach. Argument was made that a provision for liquidated damages must be construed as providing the alternative rights in the promisor to perform his promise or pay the liquidated damages as the price of non-performance. In Diamond Match Co. v. Roeber (106 N. Y. 473, 486) this court has settled the rule in this State, saying: ‘ It is a question of intention, to be deduced from the whole instrument and the circumstances ; and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced. It was said in Long v. Bowring (33 Beav. 585), which was an action in equity for the specific performance of a covenant, there being also a clause of liquidated damages, " all that is settled by this clause is that if they bring an action for damages the amount to be recovered is £1,000, neither more nor less.” ’ ”
In Phoenix Ins. Co. v. Continental Ins. Co. (supra), cited by the court in Diamond, the issue was presented whether a covenant by a grantee of realty not to erect any building on a portion of the property sold was enforcible where the deed provided that “ for a violation of the covenant ” the grantee agreed to pay $1,500 as ‘ ‘ liquidated damages ’ ’. In holding for the plaintiff the court stated: “ In determining whether, by the true construction of a covenant, the penalty is the price of the privilege of non-performance, the fact that the contract liquidates the *299 damages for a breach may be considered, but it is not a decisive, nor do we regard it as a very material circumstance. ” (87 N. Y., supra, p. 406.)
Professor Corbin writes: The question whether a particular contract is truly an alternative contract is one of interpretation. The forms of words used may be decisive; but there are no particular words that are in themselves conclusive. It may be said, however, that, if there is a promise to render one particular performance, with a provision for payment of a sum of money as a penalty or as liquidated damages for breach, without anything more, the contract is not an alternative contract.” (Emphasis supplied; 5A Corbin, Contracts, § 1213, pp. 435-436.)*
It is interesting to note that nowhere in this contract can be found the word ' ‘ option ’ ’ although this is the term used by the Appellate Division majority to describe the instant contract. Absent, therefore, an unambiguous provision, the majority below was in error in finding that the language itself precluded specific performance and for a very sound reason. Generally, the law presumes that the primary purpose of a contract, not expressly stated to be an option, is performance of the act promised and not nonperformance (see Phoenix Ins. Co. v. Continental Ins. Co., supra, p. 405). Penalty clauses and even liquidated damages clauses are generally inserted to help secure performance and to avoid litigation as to quantum of damages. In this way, it is hoped to induce performance by making delay or breaches unprofitable.
Moreover, the first reference to the $5,000 is that it was to be used in connection with the “ closing ”. This clause signifies that the escrow deposit was not even intended to assure performance, which was presumed, but it was contemplated that it would be used in connection with the performance of the contract in question. Also to be considered is the fact that the closing—originally scheduled to take place within 48 hours'— *300 was set for a week later. This surely evinces an intent that the contract be specifically performed.
The agreement grew out of a deterioration in the personal relations of the two cousins. Its first goal was the severance of their partnership. Defendant’s interpretation would only provide Henry with the “ right ” to continue as Leo’s partner if Leo did not like the division. It would be preposterous for the parties to enter into an agreement providing that, at the risk of $5,000, the parties shall see if they can agree to a division. We may not presume persons act so irrationally. If the defendant desired the Kips Bay property as well as a severance, he could have demanded the right of first choice. Or some alternative method for dividing the business would have been devised. The fact that defendant was willing to give plaintiff the right to select the property indicates that his major desire was to terminate a relationship, which was no longer bearable, rather than to obtain a right to pay $5,000 for the privilege of being restored to the status quo ante.
Nor is there anything in the surrounding circumstances which discloses a design that the liquidated damages clause is intended to bar specific performance. On this point, it is of significance that the same lawyer who represented the defendant at the time the agreement was made counterclaimed for specific performance. Defendant thus indicated that it was his understanding that the agreement could be specifically enforced.
The conclusion is clear. The agreement here does not bar plaintiff from seeking the remedy of specific performance. There being no question that defendant defaulted, plaintiff had his choice of remedies and he has elected specific performance.
A final point raised by the respondent is that equitable relief should not be granted since the agreement is allegedly ambiguous, vague, preliminary in nature and incomplete. This contention is distinctly without merit.
The provisions of this contract are fully capable of being carried out and performance would entail almost no difficulty. The shares of stock in the respective corporations could be transferred. This transfer of ownership is implicit in the phrase “ shall take ” in the third paragraph of the agreement. The promise to hold harmless the non-electing party and his wife from liability on the mortgage on the Kips Bay realty does not *301 require the execution of a further agreement to be valid. If this agreement would not reasonably supply sufficient protection to the defendant, a court of equity has the power, in fashioning its decree, to demand that the party seeking equitable relief must do equity. This same principle can be applied to the other alleged ambiguities and difficulties. Thus, defendant would be required to assist plaintiff in obtaining approval for transfer of the liquor license. We need not speculate on the effect of the failure of the Liquor Authority to approve the transfer where there is no indication of any attempt by the defendant to carry out the terms of the agreement.
If any serious difficulties as to the meaning of various terms of the agreement do ultimately arise, and at present defendant has shown none, oral- testimony as to the meaning of the term in the agreement would appear proper. In any event, the propriety of equitable relief is one which should be resolved by the trial court since it is clear that the agreement does not, as a matter of law, bar equitable relief.
Accordingly, the order of the Appellate Division should be reversed and plaintiff’s motion for summary judgment for specific performance should be granted, with costs in all courts.
Judges Burke, Scileppi, Bkeitel and Jasen concur with Judge Keating; Chief Judge Fulo and Judge Bergan dissent and vote to affirm for the reasons stated in the concurring memorandum of Judge Eager at the Appellate Division.
Order reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.

 The other two cases cited by the majority below, Hasbrouck v. Van Winkle (261 App. Div. 679, 682, affd. 289 N. Y. 595) and City of New York v. Seely-Taylor Co. (149 App. Div. 98, affd. 208 N. Y. 548) are inapposite, since former involved in essence a suit to recover the agreed price for the sale of land and the latter was an action for damages.