**NORTH AMERICAN CONSOLIDATED, INC., Plaintiff,**

**v.**

**John S. KOPKA, III, Defendant.**

**Civ. A. No. 86–0932–Y.**

United States District Court, D. Massachusetts.

Sept. 12, 1986.

John O. Mirick, Mirick, O'Connell, Demallie & Lougee, Worcester, Mass., for plaintiff.

Thomas F. Maffei, Edward H. Seksay, Choate, Hall & Stewart, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This action arises out of the alleged breach of a contract for the purchase and sale of a hotel in Gardner, Massachusetts. Jurisdiction exists under 28 U.S.C. § 1332. By the terms of the purchase and sale agreement the law governing its interpretation and the rights and obligations of the parties thereunder is that of the Commonwealth of Massachusetts.

The plaintiff-seller, North American Consolidated, Inc. ("North American") brought suit in the Superior Court of the Commonwealth of Massachusetts against the defendant-purchaser, John S. Kopka III ("Kopka") in three counts seeking, in the alternative, 1) specific performance of the agreement (Count I); 2) actual damage of $1,000,000 and punitive damages for unfair and deceptive business practices, Mass. Gen.Laws c. 93A, § 11 (Count II); and 3) enforcement of the liquidated damages provision of the agreement (Count III). Removed to the federal district court, the case is before the Court on the defendant's motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Counts I and II on the theory that, even if there was a breach, the liquidated damages provision constitutes the plaintiff's exclusive remedy and claims for specific performance or damages are therefore barred.

For the purposes of resolving the pending motion, the following factual outline may be taken as true. On January 23, 1986, North American and Kopka entered into an agreement for the purchase and sale of the Heritage Place Inn in Gardner, Massachusetts for the sum of $5,350,000. Kopka paid a deposit of $200,000 which, by the terms of the agreement, was the amount to become the property of North American as liquidated damages in the event of default by Kopka. The relevant provision, entitled "Liquidated Damages," provides that:

If the buyer shall default in the performance of its obligation under this agreement, the amount of the deposit shall become the property of the seller as liquidated damages and neither party hereto shall have any further obligations hereunder.

It is undisputed that, prior to the closing date set for March 1, 1986, Kopka informed North American that he would not purchase the property. In dispute are the reasons for Kopka's decision and whether, in light of the financing provisions of the agreement, Kopka's failure to go through with the purchase was a valid rescission entitling him to return of the deposit or whether, instead, he is in default and therefore liable to North American. These issues are not before the Court. The sole issue at this stage of the proceedings is whether North American's claims for specific performance and damages under Mass.Gen.Laws c. 93A are precluded because the liquidated damages clause provides an exclusive remedy.

For the reasons which follow, the Court rules that neither claim is barred and defendant's motion to dismiss is DENIED as to both Counts I and II.

### Specific Performance

In his supporting memoranda, Kopka advances two basic arguments which will be discussed in order. The first, in essence, is an argument that since the liquidated damages provision is valid and enforceable it should therefore preclude claims for any other remedy. Kopka relies primarily upon *Lynch v. Andrews,* 20 Mass.App.Ct. 623, 481 N.E.2d 1383 *further rev. denied,* 396 Mass. 1101, 484 N.E.2d 102 (1985), for the proposition that the "common Massachusetts practice is to include liquidated damages provision [sic] in purchase and sale agreements as the parties' exclusive remedy in the event of default." Defendant's Response to Plaintiff's Opposition to Motion to Dismiss at 2. In making this assertion, however, it appears that Kopka has grafted onto the *Lynch* holding and reason-

ing a notion of exclusivity of remedy which is unsupported. In *Lynch,* the issue was whether the seller, where the buyer was found to have defaulted, was entitled to retain the buyer's deposit as liquidated damages as an alternative option to specific performance, or whether the sum of money in question was so disproportionate to the losses experienced as to constitute a penalty. No claim was made that specific performance was barred nor did the Massachusetts Appeals Court address the issue. Whether the liquidated damages provision in the instant case is enforceable may become an issue at a later stage of these proceedings; at present it is immaterial.

Under Massachusetts law, and generally, it is well settled that a liquidated damages provision "does not necessarily exclude specific performance." *De Blois v. Boylston & Tremont Corp.*, 281 Mass. 498, 518, 183 N.E. 823 (1933). "The question is to be determined according to the intent of the parties." *Id.* at 518, 183 N.E. 823. Where the intent of the parties is that the liquidated damages provision is security for the performance of the contract rather than an alternative to performance, specific performance is not barred. *Rigs v. Sokol,* 318 Mass. 337, 342–343, 61 N.E.2d 538 (1945). The rationale for these widely accepted principles is that:

> [A] contract provision for payment of a sum of money as damages may not afford an adequate remedy even though it is valid as one for liquidated damages and not a penalty (§ 356). Merely by providing for liquidated damages, the parties are not taken to have fixed a sum for the privilege not to perform. The same uncertainty as to the loss caused that argues for the enforceability of the provision may also argue for the inadequacy of the remedy it provides. Such a provision does not, therefore, preclude the granting of specific performance or an injunction if that relief would otherwise be granted.

3 Restatement Contracts 2d, § 361, comment a (1982); *See also Novelty Bias Binding Co. v. Shevrin,* 342 Mass. 714, 175 N.E.2d 374 (1961); 71 Am.Jr.2d *Specific Performance* §§ 57–59 (1973).

The second prong of Kopka's argument is more directly germane to the key issue here—the parties' intent. Kopka argues that the language in the liquidated damages provision which provides that "neither party hereto shall have any further obligations hereunder" is a clear statement of intent to waive all other remedies. He concludes that this language is so unambiguous that this Court must hold, as matter of law, that the liquidated damages provision was intended as an exclusive remedy or a true alternative performance. "Although parties who merely provide for liquidated damages are not taken to have fixed a price for the privilege not to perform, there is no reason why parties may not fix such a price if they so choose." 3 Restatement Contracts 2d, § 361, comment b (1982).

While nothing prohibits parties from electing to include a provision for alternative performance in the form of liquidated damages, the inquiry remains one of the parties' intent, to be deduced from the whole instrument and the surrounding circumstances. A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) may be granted only if North American could prove no set of facts which would entitle it to the requested relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The parties do not cite any Massachusetts case which addresses the issue of the effect of language such as that of the liquidated damages provision at issue here, and this Court is not aware of any such case. Courts of other jurisdictions which have faced this issue have concluded that, in order for a liquidated damages provision to bar suit for specific performance, the intent of the parties to provide an exclusive remedy must be explicit. In *Miller v. U.S. Naval Institute,* 47 Md.App. 426, 423 A.2d 283 (1980), the Court of Special Appeals of Maryland reversed the lower court's grant of a motion to dismiss. There, the defendant/appellee had similarly argued that, even assuming a breach, specific performance was precluded since the contract con-

tained a liquidated damages provision designed to constitute the plaintiff's sole remedy.[1] In reversing the decision of the lower court, the Maryland Court of Special Appeals held that the language cited here did not evince a clear expression of intent to relinquish rights to specific performance. The Court also noted that a rule requiring explicit relinqishment is especially warranted with contracts for the sale of real property where, when breached, specific performance is often the only adequate remedy. *See also Rubenstein v. Rubenstein*, 23 N.Y.2d 293, 296 N.Y.S.2d 354, 244 N.E.2d 49 (1968).

This Court finds the reasoning of the *Miller* Court highly persuasive. The "no further obligations" language relied upon here is no more explicit than that in *Miller*. This Court likewise rules that the liquidated damages provision in this case is sufficiently ambiguous to require a trial to determine whether it was intended as security for performance rather than a true alternative performance precluding all other contractual remedies. With such questions regarding the intent of the parties outstanding, the motion to dismiss must be denied.

### The Chapter 93A Claim

For the same reason—lack of a sufficiently clear expression of mutual intent— North American cannot be held to have waived the statutory rights and remedies which may be available to it in addition to its contractual remedies. Kopka's motion on Count II is therefore denied as well.

This motion, however, raises an important question which, while not requiring decision at this stage of the proceedings, touches on an important matter of public policy neither addressed by the parties nor, as yet, by the courts of Massachusetts. That question is whether, assuming the clearest possible expression of intent to preclude suit under chapter 93A, a party may specifically enforce such an agree-

ment, or whether such an agreement would be void as contrary to public policy.

In general, an individual may contractually waive a known right or remedy. However, as held by the Supreme Court in *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704, 65 S.Ct. 895, 900, 89 L.Ed. 1296 (1945):

> ... a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy.... Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate.

Similarly, the well-settled principle in Massachusetts is that,

> Where laws are enacted on grounds of general policy their uniform application for the protection of all citizens alike is desirable, and an agreement to waive their provisions is generally declared invalid, but where they are designed solely for the protection of rights of private property, a party who may be affected can consent to a course of action, which if taken against his will, would not be valid.

*Continental Corp. v. Gowdy, et al.*, 283 Mass. 204, 217, 186 N.E. 244 (1933) *quoting Washington National Bank v. Williams*, 188 Mass. 103, 107, 74 N.E. 470 (1905). This principle is equally applicable to situations where, as is alleged here, a party agrees to discharge liabilities which may result from a course of action. *Continental Corp.*, 283 Mass. at 217, 186 N.E. 244. *See also Spence v. Reeder*, 382 Mass. 398, 416 N.E.2d 914 (1981); *Quality Finance Co. v. Hurley*, 337 Mass. 150, 148 N.E.2d 385 (1958); *Desseau v. Holmes*, 187 Mass. 486, 73 N.E. 656 (1905). Under the same reasoning, an otherwise valid release from liability for negligence is unenforceable

---

1. The contract of sale provided, in part, that: ... the Sellers and Purchaser are required and agree to make full settlement in accordance with the terms hereof. If the purchaser

shall fail to do so, the deposit herein shall be forfeited *and the Purchaser shall thereby be relieved from further liability hereunder. Id.* 423 A.2d at 284 (emphasis added).

where the beneficiary of that release has failed to comply with statutory duties. "Such a contract cannot serve to shield the defendant from responsibility for violation of a statutory duty." *Henry v. Mansfield Beauty Academy, Inc.,* 353 Mass. 507, 511, 233 N.E.2d 22 (1968) (Wilkins, C.J.).

In resolving the question whether claims under chapter 93A, and more specifically under § 11 of chapter 93A, are waivable, it is necessary to look first to the purposes of that statute. This Court need not here engage in a full-scale examination of the legislative intent underlying chapter 93A and the various amendments to § 11 thereof. It is clear, however, that the statute as a whole was enacted as a broad consumer protection statute imbued with concerns for the public welfare. "It is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 693, 322 N.E.2d 768 (1975). Therefore, it may be that the rule most protective of the public and truest to the legislative purpose underlying both §§ 9 and 11 would be the rule that claims of unfair and deceptive practices may never be prospectively waived by contract, either by individual consumers or business people.[2]

On the other hand, a question arises as to whether, in addition to asking if the underlying purpose of the statute would be frustrated, one must or should, in fairness to the individual parties and out of respect for their contractual bargain, examine the nature of the particular transaction as well. In addressing a somewhat related issue—whether claims under § 11 may be referred to arbitration, unlike claims under § 9 which do not require exhaustion of remedies—the Massachusetts Appeals Court has taken the approach of examining the nature of the particular dispute and resulting claim. Thus, where a consumer protection claim was essentially a private dispute arising out of a commercial transaction, lacked

any aspect of strong public policy, and appeared to be an attempt to bolster a clearly private claim, the Court affirmed the order to arbitrate in accordance with the parties' agreement. *Greenleaf Engineering & Construction, Inc. v. Teledyne, Inc.,* 15 Mass.App.Ct. 571, 576, 447 N.E.2d 9 (1983) (Cutter, J.).

Clearly, the enforceability of agreements to resolve disputes through arbitration rather than judicial proceedings presents a different question from the enforceability of alleged waivers of all statutory rights and remedies under chapter 93A, § 11. A provision for an alternative forum need not infringe the public policy behind the enactment of consumer protection legislation and may well serve other socially desirable goals at the same time. One may not be able to say the same of an option contractually to waive the protections of chapter 93A altogether, even as between sophisticated business people.

The proper resolution of these issues awaits a more complete development of the record. For now it is enough to rule that the motion to dismiss is DENIED.

SO ORDERED.

---

2. It should be noted that in a similar consumer protection statute pertaining to contracts for health club services, the legislature has specifically provided that "Any waiver of the provisions of this Chapter shall be deemed void and unenforceable by the Seller as contrary to public policy." Mass.Gen.Laws c. 93, § 85.