J-A31012-14

2015 PA Super 95

| GEISINGER CLINIC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| MARK M. RADZIEWICZ, D.O., | |
| Appellee | No. 505 MDA 2014 |

Appeal from the Order Entered February 24, 2014
In the Court of Common Pleas of Montour County
Civil Division at No(s): 449-2013

BEFORE:  BOWES, OTT, and STABILE, JJ.

OPINION BY BOWES, J.:                              **FILED APRIL 24, 2015**

Geisinger Clinic ("Geisinger") appeals from the February 24, 2014 order denying its request for a preliminary and permanent injunction. We reverse and remand for entry of an order consistent with this adjudication.

On December 3, 2013, Geisinger instituted this action seeking an injunction against its former employee, Dr. Mark M. Radziewicz, D.O. ("Dr. Radziewicz"). It averred the following in its complaint. On January 8, 1998, upon accepting employment at Geisinger, Dr. Radziewicz executed a practice agreement. The January 8, 1998 accord stated that Dr. Radziewicz accepted a position as an associate physician practicing family medicine for Penn State Geisinger Medical Group-Dallas of Penn State Geisinger Clinic commencing on July 1, 1998. Dr. Radziewicz agreed that "[a]cceptance of this position" constituted his understanding that, in the event that his

employment was terminated, it was his "agreement to restrict my practice of medicine" and that he could practice in "an area outside of a 15 mile radius" from his principal site of practice. Complaint, 12/3/13, at Exhibit A p.1. The restriction lasted for two years following the end of the parties' employment relationship.

Dr. Radziewicz acknowledged that the restrictive covenant was necessitated by the fact that "considerable effort will be devoted [by] other Penn State Geisinger Clinic physicians and personnel in assisting me in the development and maintenance of my practice[.]" *Id.* Geisinger agreed to waive the covenant if Dr. Radziewicz paid either the greater of Dr. Radziewicz's annualized base salary or his total compensation during the year prior to his termination.

When the January 8, 1998 restrictive covenant was executed, Dr. Radziewicz planned to practice at the noted Dallas location. However, before commencing employment, his practice location was changed to Mountain Top, Luzerne County. Accordingly, on April 19, 1998, before he began to work for Geisinger, Dr. Radziewicz signed an addendum to the January 8, 1998 agreement. In the April 19, 1998 addendum, the restrictive covenant was altered to encompass an area that was within fifteen miles from Penn State Geisinger Health System's Mountain Top office. Dr. Radziewicz again stated that, by accepting his new position, he agreed to "restrict my practice of medicine" to outside the noted fifteen-mile radius and that the restriction applied for two years. *Id*. at Exhibit B. The

addendum confirms that, "This restriction applies not only to an office I may seek to establish within the restricted area for my practice but to staff memberships and the exercise of clinical privileges at any health care facility" within the denoted area. *Id*.

Dr. Radziewicz practiced as a full-time physician from July 1, 1998 through June 22, 2012 at the Mountain Top practice site. Geisinger spent in excess of $67,000 to promote and build Dr. Radziewicz's family practice at that location, and Dr. Radziewicz had access to Geisinger's marketing and strategic plan techniques. Geisinger trained Dr. Radziewicz in various areas. On June 22, 2012, Dr. Radziewicz separated from employment with Geisinger, and on June 26, 2012, Dr. Radziewicz became an employee of Advanced Inpatient Medicine, Inc. ("AIM"). On October 7, 2013, Dr. Radziewicz began to violate his restrictive covenant by starting to practice medicine with the fifteen-mile radius prohibited by the accord.

Hearings were held on the matter. Dr. Radziewicz reported that he worked for Geisinger as a primary care physician from 1998 until his termination on June 22, 2012. Dr. Radziewicz acknowledged executing the January 8, 1998 and April 19, 1998 documents as a condition for his initial hiring by Geisinger. Dr. Radziewicz also admitted that he was working for

an AIM hospital approximately eight miles from where he formerly practiced for Geisinger in Mountain Top.[1]

Dr. Radziewicz was asked whether, during his tenure at Geisinger, Geisinger "spent its resources promoting that clinic site and promoting and developing at that site," and Dr. Radziewicz responded, "Correct." N.T. Hearing, 12/17/12, at 21-22. Dr. Radziewicz also did not dispute that Geisinger promoted him personally "in newspapers and advertisements, mailers to [its] patients" and that the advertising payments "came out of Geisinger's costs[.]" *Id*. at 22. The witness was asked if he was "the beneficiary of Geisinger's practices with respect to developing [his] clinical skill, chronic disease management, things like that," and he again responded, "Correct." *Id*. at 23. He also was "privy to" and participated in "discussions regarding Geisinger's strategic development and strategic business plan[.]" *Id*.

When he separated from employment with Geisinger on June 22, 2012, Dr. Radziewicz began to work for AIM on June 26, 2012, at Wayne Memorial Hospital, Honesdale, Wayne County, which was not within the area covered by the April 19, 1998 restrictive covenant. Dr. Radziewicz worked there as a hospitalist, a doctor who cares for inpatients admitted to the hospital. A hospitalist operates as a primary care physician ("PCP") for

_____

[1] The city in question is spelled "Mountain Top" in the complaint, but "Mountaintop" in the transcript. We have utilized its correct spelling.

inpatients in a hospital and treats patients who either do not have a PCP or whose PCP does not have privileges at the hospital in question. *Id*. at 52-53. Upon discharge, if the patient has a PCP, he is referred to that doctor, but a patient who has no PCP can be referred to a PCP suggested by the hospitalist.

On October 7, 2013, AIM transferred Dr. Radziewicz to Wilkes-Barre General Hospital in Wilkes-Barre, which, as Dr. Radziewicz admitted, was approximately eight miles away from Mountain Top. At that location, Dr. Radziewicz continued to work as a hospitalist. Dr. Radziewicz specifically agreed that he was not disputing that he may have seen Geisinger patients at Wilkes-Barre General Hospital, but he had no specific knowledge of having done so. *Id*. at 30, 56.

Geisinger also adduced the following unrebutted proof. None of Geisinger's PCPs has staff privileges at Wilkes-Barre General Hospital. Concomitantly, any Geisinger patient admitted to that hospital would have to use a hospitalist. A patient can be admitted through the emergency room, by a surgeon, or through referral by his or her PCP. While Dr. Radziewicz had no control over who is admitted to the hospital, another PCP in the area could be inclined to admit a patient based upon Dr. Radziewicz's general reputation in the community for being a good physician. Thus, if Dr. Radziewicz had a positive reputation, other PCPs would be more likely to refer their patients to Wilkes-Barre General Hospital rather than the nearby Geisinger hospital due to that status. *Id*. at 76. Geisinger submitted

documentary proof that Dr. Radziewicz had treated a Geisinger patient at Wilkes-Barre General Hospital.

Additionally, the following was uncontested.  Since 2000, Geisinger expended about $65,000 promoting and marketing Dr. Radziewicz's practice. In addition, during his fourteen-year tenure at Geisinger, Geisinger developed Dr. Radziewicz's family practice skills. "The skills of systems of care that Geisinger" developed related to "transitions from inpatient to outpatient" and "organized delivery using the electronic health record for chronic disease and preventative care." *Id*. at 86.  Geisinger is nationally known and recognized for methods that it has developed and which Dr. Radziewicz utilized at that institution.  He gained knowledge of Geisinger's "delivery processes, the systems, the organization, the methods by which you deliver" the clinical skills learned in medical school and residency programs "in an organized setting taking advantage of the electronic health record and the group practice." *Id*. at 87.

Based on this evidence, on February 24, 2014, the trial court denied Geisinger's petition for a preliminary/permanent injunction.  It concluded that Geisinger was not likely to prevail on the merits of its position that Dr. Radziewicz breached the restrictive covenant.  It also found that there may be an adequate remedy at law in that Geisinger represented that it was pursuing an action at law for damages in Luzerne County.  It also found that Dr. Radziewicz would suffer more harm than Geisinger since issuance of an

injunction would result in a loss of his livelihood. This appeal followed denial

of relief. Geisinger raises the following contention on appeal:

> Whether the trial court abused its discretion in denying Geisinger Clinic's request for preliminary injunction where no reasonable grounds exist in the record to support the trial court's Order and the rule of law relied upon by the trial court was erroneous and misapplied?

Appellant's brief at 2.

A trial court's decision to grant or deny a preliminary injunction is

reviewed under an abuse of discretion standard. ***Brayman Const. Corp. v.***

***Com., Dept. of Transp.***, 13 A.3d 925 (Pa 2011). Specifically:

> On an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor.

***Id***. at 935-36 (citations omitted).

A petition must establish the following six elements in order to obtain

a preliminary injunction:

> (1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury will occur from refusing to grant the injunction than from granting it; (3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct; (4) the petitioner is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the public interest will not be harmed if the injunction is granted. ***See Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.,*** 573 Pa. 637, 646–47, 828 A.2d 995, 1001 (2003).

*Id*. at 935.

The trial court concluded that one, two, and four were not satisfied herein.[2] We first address the trial court's finding that Geisinger would not suffer irreparable harm that could not be compensated through monetary damages absent issuance of the injunction. As we noted in *Quaker City*

_____

[2] We note our disagreement with the learned dissent's conclusion that the trial court's credibility resolutions render his ruling in this matter untouchable on appeal. Specifically, the dissent notes that "the trial court determined Geisinger had failed to meet elements one, two and four." Dissent at 3. The dissent continues that the "trial court's determinations were based upon its credibility determinations," and it insists that we are therefore bound to accept them. *Id*. The restrictive covenant is a contract, and the question of whether a party can enforce a restrictive covenant through injunctive relief is dependent upon whether it has been breached. "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Miller v. Poole*, 45 A.3d 1143, 1145 (Pa.Super. 2012) (citation omitted); *accord Clarke v. MMG Ins. Co.*, 100 A.3d 271, 275 (Pa.Super. 2014) ("[I]n interpreting a contract, this Court need not defer to the trial court.").

Indeed, the only credibility determinations rendered herein related to the court's conclusions that Geisinger's witnesses exaggerated both the impact of Dr. Radziewicz's violation of the restrictive covenant and the amount of expenditures made to advance his practice. First, the impact on Geisinger of Dr. Radziewicz's violation was not a pertinent consideration in this case. No one contested that the restrictive covenant was enforceable as reasonable in terms of geographic scope and duration. The sole issue was whether Dr. Radziewicz violated its terms. If he did, then Geisinger is entitled to enforce it under controlling Pennsylvania case authority. Furthermore, since Dr. Radziewicz executed the accord as a condition of starting employment, it was enforceable, *Pulse Technologies, Inc. v. Notarom*, 67 A.3d 778, 781 (Pa. 2013), and the amount expended by Geisinger to promote his practice was unnecessary to support a finding that the agreement was valid. Geisinger's evidence in this respect was merely an alternative means of establishing consideration for the covenant.

*Engine Rebuilders, Inc. v. Toscano*, 535 A.2d 1083, 1085 (Pa.Super. 1987) (quoting *Bryant Co. v. Sling Testing and Repair, Inc.,* 369 A.2d 1164, 1167 (Pa. 1977):

> It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention.

We observed in that case that a restrictive covenant is designed to prevent more than just a loss of business, which can be assessed by calculable damages. It is also tailored to prevent the potential for a disturbance in the relationship between the former employer and its clients and to protect the employer's client base that has been established through prior dealings. "It is the **possible consequences** of this unwarranted interference with customer relationships that is unascertainable and not capable of being fully compensated by money damages." *Quaker City*, *supra* at 1086 (quoting *Bryant*, *supra* at 1167) (emphasis added). Thus, if a covenant is reasonable, then it becomes enforceable in equity.[3]

The fact that Geisinger potentially will be able to comb its patient base and determine lost revenues does not mean the injunction is not necessary

---

[3] The dissent's position is that the injunction cannot issue since Geisinger's damages can be ascertained. Dissent at 7. This position is contrary to the recited law. These cases establish that the sole reason for a restrictive covenant is to prevent the contracting party from competing with the other party. It is the potential consequences of the competition and possible disruption of client base that cannot be compensated.

to prevent immediate and irreparable harm. Since a restrictive covenant is entered in order to prevent a potential rather than actual loss of clients, it will be given effect even if the former employer could possibly ascertain its loss of income from the breach. If a party to such an agreement violates its tenets, then compliance with the accord must be compelled through injunctive relief. Otherwise, the agreement is not worth the paper upon which it is written. Thus, there were no reasonable grounds for the trial court's determination that the first aspect of the test for obtaining an injunction was not satisfied herein.

Although not used by either Dr. Radziewicz or the trial court as grounds for denying Geisinger injunctive relief, the dissent contends that the inclusion of a purported liquidated damages clause in the contract establishes that Geisinger's harm can be adequately compensated with monetary damages. The clause in question reads:

> I further understand that Penn State Geisinger Clinic will waive this restriction upon receipt of payment, in advance, of a sum equal to the greater of (a) my annualized base salary as of the date of this Agreement; or(b) my total compensation paid by Penn State Geisinger Clinic during the twelve calendar months immediately preceding the month in which my termination occurs, if I wish to continue my practice within the restricted area during the two years following my termination. Because the financial burdens Penn State Geisinger Clinic would endure are very difficult to ascertain and quantify, I agree that this is a fair amount of compensation to pay, as liquidated damages, and not as a penalty, in the event that I wish to continue my practice within the restricted area within the specified two year period.

First, the characterization of this clause as a liquidated damages clause is tenuous. In a liquidated damages clause, the parties agree, in advance of any breach, that a set amount of damages will be awarded if a breach occurs.[4]  Thus, a liquidated damages clause would provide that, if Dr. Radziewicz breached the contract, then Geisinger could sue and obtain the damages outlined in the covenant.  This clause is the reverse scenario in that it permits Dr. Radziewicz to avoid the restrictive covenant if he tenders an amount to Geisinger characterized as liquidated damages.

More importantly, the Restatement of Contracts explicitly outlines that a party can obtain injunctive relief despite the existence of a liquidated damages clause in the contract.  It states, "Specific performance or an injunction may be granted to enforce a duty even though there is a provision

_____

[4] Specifically Restatement (Second) of Contracts § 356(1) provides:

> (1)    Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

Comment (a) further delineates, "The parties to a contract may effectively provide in advance the damages that are to be payable in the event of breach as long as the provision does not disregard the principle of compensation. The enforcement of such provisions for liquidated damages saves the time of courts, juries, parties and witnesses and reduces the expense of litigation."

for liquidated damages for breach of that duty." Restatement (Second) of Contracts § 361 Comment a provides a rationale for the precept:

> A contract provision for payment of a sum of money as damages may not afford an adequate remedy even though it is valid as one for liquidated damages and not a penalty (§ 356). Merely by providing for liquidated damages, the parties are not taken to have fixed a price to be paid for the privilege not to perform. The same uncertainty as to the loss caused that argues for the enforceability of the provision may also argue for the inadequacy of the remedy that it provides. Such a provision does not, therefore, preclude the granting of specific performance or an injunction if that relief would otherwise be granted.

*Accord Roth v. Hartl*, 75 A.2d 583, 586 (Pa. 1950) (Presence of a liquidated damages clause in an agreement for the sale of real estate "will not restrict the remedy thereto or bar specific performance unless the language of the part of the agreement in question, or of the entire agreement, together with other relevant evidence, if any, shows a contrary intent.");[5] *Boulder Medical Center v. Moore*, 651 P.2d 464 (Colo.App.

---

[5] Other jurisdictions have likewise ruled that the inclusion of a liquidated damages clause in a contract does not automatically preclude the non-breaching party from specifically enforcing the contract in question and that the intent of the parties must be examined. *Vacold LLC v. Cerami*, 545 F.3d 114, 130-31 (2nd Cir. 2008) (emphasis in original) ("Although a liquidated damages provision precludes a party from recovering lost profits and other measures of **damages** . . . it does not prevent a party from seeking specific performance, absent an express provision to this effect.); *Beery v. Plastridge Agency, Inc.*, 142 So.2d 332, 334-35 (Fla.App. 1962) ("A provision for liquidated damages in a contract does not necessarily bar injunctive relief against its breach. If, however, it appears that the liquidated damages clause was intended to furnish a party the alternative of performance or payment or was to be an exclusive remedy, an injunction will not be issued."); *Albers v. Koch*, 1173 N.W.2d 293, 295 (Neb. 1969) ("The fact that a contract provides for payment of liquidated damages for

*(Footnote Continued Next Page)*

1982) (medical partnership awarded both liquidated damages and injunctive relief where physician breached covenant not to compete). ***Bradley v. Health Coalition, Inc.***, 687 So.2d 329 (Fla.App. 3 Dist. 1997) (rejecting former employee's position that a noncompetition agreement could not be enforced through injunctive relief since the accord contained a liquidated damages clause thereby providing adequate legal remedy for breach of covenant).

Herein, the liquidated damages clause in question supports the conclusion that injunctive relief should issue. The clause permitted Dr. Radziewicz to avoid the effect of the restrictive covenant if he tendered the stated amount, which Dr. Radziewicz failed to do. Since Dr. Radziewicz did not proffer the amount outlined in the clause, Geisinger's ability to enforce

---

*(Footnote Continued)* ───────────

breach of promise is not a bar to specific enforcement of the promise. Where a contract provides for such payment as a true alternative performance, the promisor's election to pay this price will prevent specific enforcement of the alternative against him."); ***Rubinstein v. Rubinstein***, 23 N.Y.2d 293, 298, 244 N.E.2d 49, 52 (1968) ("For there to be a complete bar to equitable relief there must be something more, such as explicit language in the contract, that the liquidated damages provision was to be the sole remedy."); ***Simenstad v. Hagen***, 126 N.W.2d 529, 535 (Wis. 1964) ("This court has stated, however, that the remedy of specific performance is not made unavailable by the fact that the contract contains a provision for the payment of liquidated damages in case of breach."); ***see also  Kilsheimer v. Rose & Moskowitz***, 257 F.2d 242 (2[nd]Cir. 1958); ***Armstrong v. Stiffler***, 56 A.2d 808 (Md. 1948); ***Randall v. Douglass***, 32 N.W.2d 721, 723 (Mi. 1948); ***Save-Way Drug, Inc. v. Standard Inv. Co.***, 490 P.2d 1342 (Wash.App. 1971).
.

the restrictive covenant is reinforced rather than eroded by the clause in question.

We also concur with Geisinger that there are no reasonable grounds for the trial court's declaration that greater injury would result to Dr. Radziewicz by grant of the injunction. In this respect, the trial court decided that Dr. Radziewicz would lose his ability to earn a living if the injunction were granted. The evidence presented by Dr. Radziewicz himself precludes such a finding. Dr. Radziewicz reported that he was gainfully employed at another AIM facility, Wayne County Hospital, after his employment was terminated, and he then transferred to the hospital within the zone prohibited by the restrictive covenant. Dr. Louis O'Boyle, who was called as a witness by Dr. Radziewicz, owns AIM, which employs Dr. Radziewicz and provides the hospitalists for Wilkes-Barre General Hospital and Wayne Memorial Hospital. N.T. Hearing, 2/12/14, at 4. Dr. O'Boyle agreed that there was "nothing to prevent Dr. Radziewicz from going back to Wayne Memorial Hospital," and that his compensation would remain the same. *Id*. at 253. Thus, the proof presented by Dr. Radziewicz established that he would not lose his ability to make a living if the restrictive covenant was enforced and there are no apparently reasonable grounds for the trial court's contrary finding.

Finally, we analyze whether the trial court correctly decided that it is unlikely that Geisinger will prevail on the merits. We conclude that the restrictive covenant is enforceable and was breached and that, concomitantly, there are no apparently reasonable grounds for the trial

court's conclusion that Geisinger is unlikely to prevail on the merits. "In order for a 'non-competition' covenant to be enforceable, it must relate to a contract for employment, be supported by adequate consideration and be reasonably limited in both time and territory." *Insulation Corp. of America v. Brobston*, 667 A.2d 729, 733 (Pa.Super. 1995). Although "Pennsylvania courts have historically been reluctant to enforce contracts that place restraints on trade or on the ability of an individual to earn a living," it is settled that "non-competition covenants are not *per se* unreasonable or unenforceable." *WellSpan Health v. Bayliss*, 869 A.2d 990, 996 (Pa.Super. 2005). A restrictive covenant must be reasonably related to a legitimate business interest of the employer. *Id*. "In addition, the temporal and geographical restrictions imposed on the ex-employee must be reasonably limited." *Id*. at 999.

The contract in question was related to a contract for employment, as Dr. Radziewicz admitted that he signed it in order to accept employment with Geisinger. Additionally, it is supported by adequate consideration. As our Supreme Court noted in *Pulse Technologies, Inc. v. Notarom*, 67 A.3d 778, 781 (Pa. 2013) (citation omitted), "In Pennsylvania where a contract of employment, which is ancillary to the taking of employment, contains reasonable restrictive covenants that do not constitute illegal restraints of trade, the restrictive covenants are valid and enforceable." Thus, where the covenant was entered as part of the contract establishing a new employment relationship, the employment itself "constitutes

consideration supporting that covenant, as well as all other terms of the employment contract." **Socko v. Mid-Atlantic Systems of CPA, Inc.**, 99 A.3d 928, 931-32 (Pa.Super. 2014), *appeal granted*, 2014 WL 6991669 (Pa. Dec. 11, 2014).

In the present case, the restrictive covenant was ancillary to Dr. Radziewicz's acceptance of employment at Geisinger and, based upon that fact alone, supported by consideration. The agreement additionally protected a reasonable interest of Geisinger, in that, according to its unrefuted proof, it promoted Dr. Radziewicz's nascent practice of medicine and facilitated his ability to earn a living in the area by advertising and building a patient base. No one contested that the agreement in question was geographically and temporally reasonable. Hence, it was enforceable.

We note that the trial court implicitly concluded that there was no consideration for the accord. It found that Geisinger exaggerated its expenditures to nurture Dr. Radziewicz's practice. However, given that the covenant's consideration was provided by the fact that Dr. Radziewicz entered it ancillary to his employment, whether Geisinger expended significant monetary resources to promote the practice does not affect the enforceability of the covenant. Moreover, Dr. Radziewicz admitted that sums were expended to promote his practice and that he learned practices and policies from Geisinger that enhanced his ability to engage in the practice of medicine, which he began with that entity.

The trial court also found that the restrictive covenant was not violated since Dr. Radziewicz was not competing with his former practice. This finding was premised upon the fact that Dr. Radziewicz was a hospitalist rather than a practicing PCP in an outpatient setting. However, the fact that Dr. Radziewicz was an inpatient PCP rather than clinical PCP is not pertinent to whether the agreement was violated. Dr. Radziewicz agreed "to restrict my practice of medicine." Complaint, 12/3/13, at Exhibit B. The April 19, 1998 addendum confirms that, "This restriction applies not only to an office I may seek to establish within the restricted area for my practice but to staff memberships and the exercise of clinical privileges at any health care facility" within the denoted area.[6]  *Id*.  As of October 7, 2013, Dr.

---

[6]    In light of the contract language, we disagree that the trial court's ruling is proper when one understands "Dr. Radziewicz's duties with both Geisinger and Advanced Inpatient Medicine[.]" Dissent at 4. The dissent delineates that Dr. Radziewicz's duties as a hospitalist for AIM do not compete with the PCPs at his former practice with Geisinger.

The language of the contract does not limit the scope of the restrictive covenant to Dr. Radziewicz's performance as a PCP. It states that Dr. Radziewicz agreed not to practice medicine for two years within the covered area. Similarly, the language covers Dr. Radziewicz's staff membership and clinical privileges at any health care facility. Hence, it is irrelevant that Dr. Radziewicz is a hospitalist for AIM and was a PCP for Geisinger. He is practicing medicine and has staff membership and clinical privileges at an AIM health care facility. He initiated that employment within two years of his separation from service with Geisinger. The facility where he practices medicine was within the fifteen-mile radius encompassed by the agreement. He violated the clear and unequivocal language of the agreement, and it unnecessary to examine his duties as a hospitalist as opposed to a PCP to determine if the covenant was breached.

Radziewicz was practicing medicine at Wilkes-Barre General Hospital, N.T. Hearing, 2/12/14, at 17, regardless of whether he competed with his former PCP practice with Geisinger. He was exercising clinical privileges at a health care facility while still subject to the restrictive covenant. Hence, Dr. Radziewicz violated the covenant, and there were no apparent reasonable grounds for the trial court's conclusion to the contrary. The restrictive covenant was valid, and Dr. Radziewicz violated its clear and express terms when he started to work at Wilkes-Barre General Hospital in October 2013.

We now consider what relief to grant Geisinger since the restrictive covenant expired on June 22, 2014, while this appeal was pending. Geisinger asks that an injunction be issued preventing Dr. Radziewicz from practicing at Wilkes-Barre General Hospital for "a period of six (6) months and three (3) weeks, which is the equivalent of the period of time left in the restrictive covenant when Geisinger filed its Complaint." Appellant's reply brief at 5. Dr. Radziewicz's position is that the agreement expired on June 22, 2014, and contains no language permitting the time to be amended.[7]

_____

[7] Dr. Radziewicz also suggests that any argument by Geisinger seeking an extension of the agreement is waived as not raised in the court below. However, when this action was instituted, when the order denying the injunction was denied, and when this appeal was filed, the agreement was still in force. It did not expire until after the pendency of this appeal. There was no reason to raise that position until the agreement expired. Hence, we decline to find waiver under these facts.

- 18 -

Initially, we observe that we have revised restrictive covenants by judicial pronouncement. Specifically, when a restrictive covenant is not reasonably limited in geographic location, the trial court is permitted to determine the parameters of the covenant in question. In **Davis & Warde**, **Inc. v. Tripodi**, 616 A.2d 1384, 1388 (Pa.Super. 1992), we outlined:

> The covenant not to compete in the instant case, although limited in time, was not limited geographically. This does not necessarily impair the validity of the covenant, but any relief granted by the trial court must be geographically limited so as not to exceed that which is reasonably necessary to provide the protection for which appellant contracted. **See**: **Sidco Paper Co. v. Aaron**, 465 Pa. 586, 594-595, 351 A.2d 250, 254-255 (1976) ("where the covenant imposes restrictions broader than necessary to protect the employer, we have repeatedly held that a court of equity may grant enforcement limited to those portions of the restrictions which are reasonably necessary for the protection of the employer."); **Bell Fuel Corp. v. Cattolico**, **supra** (trial court may define geographic scope of covenant after receiving proper evidence upon remand); **Quaker City Engine Rebuilders, Inc. v. Toscano**, 369 Pa.Super. 573, 584-585, 535 A.2d 1083, 1089 (1987) ("In Pennsylvania, an otherwise valid restrictive covenant which is geographically overbroad is 'divisible and enforceable once it has been limited by the court to reasonable geographical limits'"; therefore case remanded to trial court to determine reasonable geographic scope of covenant). . . . On remand, this determination should be made by the trial court.

Herein, the covenant not to compete was breached by Dr. Radziewicz. We will not hesitate to fashion an appropriate remedy for that breach. He cannot be allowed to practice in violation of the terms of the restrictive covenant for the period during which he violated its terms. To do so would encourage others to prematurely breach valid restrictive covenants in the

hopes of running out the term during the pendency of legal proceedings. Hence, this case is remanded for entry of an injunction prohibiting Dr. Radziewicz from practicing medicine in violation of the restrictive covenant for the six months and three weeks that he breached its terms.

The order is reversed. The case is remanded for entry of an order consistent with this adjudication. Jurisdiction is relinquished.

Judge Stabile joins the opinion.

Judge Ott files a dissenting opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2015