(May 14, 2009)

■ L.K. Station Group, LLC, Appellant, v Quantek Media, LLC, et al., Respondents. [879 NYS2d 112]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered on or about July 31, 2008, which granted defendants' motion to dismiss the amended complaint, alleging, inter alia, breach of contract and fraudulent concealment, unanimously affirmed, with costs.

Plaintiff L.K. Station Group is a Florida limited liability company in the business of purchasing television stations, with a focus on Hispanic markets. In 2007 it undertook to purchase two television stations in Santa Rosa, California and Bellingham, Washington, for which it required $30 million in financing. On or about July 31, 2007 its broker received a letter from codefendant Bulltick Capital Markets in which it was represented that codefendant Quantek Asset Management, LLC, with which Bulltick was affiliated, was committed to provide a loan to fund the purchase of the television stations, and expressed the hope that a "mutually satisfactory asset purchase agreement" could be reached.

On August 20, 2007, Quantek Media and L.K. Station entered into a memorandum of understanding outlining the terms for them to pursue opportunities in the United States television and radio markets. Except for certain specified paragraphs, it was agreed that the memorandum of understanding was a "nonbinding commitment [and was] submitted for discussion purposes only."

On August 30, 2007, codefendant Tvestments Ltd., another Bulltick-affiliated defendant (all ten of the defendants are represented by the same law firm), provided L.K. Station with $2 million in initial financing. It is alleged that the next day, L.K. Station, in reliance on the July letter, entered into an asset purchase agreement for the two television stations for the price of $26.6 million.

In an October 1, 2007 letter, Tvestments advised L.K. Station of its commitment to provide the entire principal amount of the financing, up to the amount of $30 million. In pertinent part, the commitment letter contained the following clause: "You further agree that no Indemnified Party [Tvestments or any of its affiliates] shall have any liability (whether in contract, tort or otherwise) to [L.K. Station] . . . for or in connection with the transactions contemplated hereby, except for direct damages (as opposed to special, indirect, consequential or punitive damages (including, without limitation, any loss of profits, business or anticipated savings)) determined . . . to have resulted primarily from such Indemnified Party's gross negligence or willful misconduct."

Section 8 of the commitment letter also stated, "You should be aware that Tvestments or one or more of its affiliates may be providing financing or other services to parties whose interests may conflict with yours." Section 9 provided that the agreement was to be governed in accordance with New York law, and recited that "[t]his Commitment Letter sets forth the entire agreement between the parties with respect to the matters addressed herein and supersedes all prior communications, written or oral, with respect hereto."

When L.K. Station sought to close the loan on March 31, 2008, it was advised that Tvestments would not provide financing, purportedly because L.K. Station had failed to close the purchase pursuant to the deadlines set in the asset purchase agreement, and because certain anticipated collateral was impaired.

The foregoing facts form the essence of the claim for breach of contract, including a request for specific performance. Some additional details are necessary for resolution of the claim for fraudulent concealment. L.K. Station claims that when it first met with defendants' representatives, on July 24, 2007, they were emphatic that they had no interest in getting into the media or television business. Yet, it is alleged that in June 28, 2007, defendants had been in communication with representatives from a competitor of L.K. Station, CaribeVision Holdings, Inc., to acquire a competing economic interest in CaribeVision,

and failed to disclose these negotiations, which ultimately did result in a partial acquisition in February 2008. L.K. Station claims that it was injured because it pursued its plans to purchase the two television stations in reliance on the belief that defendants were dealing with it alone, and that defendants' failure to lend it the money to complete the acquisition was a result of the surreptitious negotiations.

This action was filed on April 7, 2008. As amended, it alleged four causes of action, only two of which are at issue on this appeal.* The first cause of action is for breach of contract, and seeks either specific performance or damages resulting from the breach and defendants' willful misconduct. The second alleges fraudulent concealment in that some of the defendants had superior knowledge concerning their intent to acquire a competing interest in CaribeVision which barred their obligation to L.K. Station, they deliberately failed to disclose this information, such information was material to L.K. Station's decisions, and L.K. Station reasonably relied and acted upon such mistaken knowledge to its detriment, because it would not have otherwise entered into the contracts.

Defendants moved to dismiss the amended complaint pursuant to CPLR 3211 (a) (1) and (7). They sought dismissal of the breach of contract claim on the ground that it was barred by the terms of the commitment letter, as L.K. Station failed to allege facts to show willful misconduct, and L.K. Station's remedy was limited to direct damages.

Defendants also sought to dismiss the fraud cause of action on the ground that they did not have a duty to disclose their CaribeVision dealings to L.K. Station, with whom they were engaged in an arm's length transaction, and claimed, in any event, that they disclosed their intent in the commitment letter. They asserted that the noncompete agreement with CaribeVision did not bar the L.K. Station loan, and, regardless, any recovery for fraud was limited to out-of-pocket expenses.

In opposition, L.K. Station argued that the July letter was an enforceable contract, that the terms of the commitment letter did not expressly preclude specific performance, and that the merger clause did not extend to the prior agreements as Tvestments was not a party thereto. L.K. Station also argued that Florida law applied, as its place of injury was Florida, where it was located and defendants' actions occurred. L.K. Station maintained that defendants had a duty to disclose their plans

---

* Although L.K. Station seeks reinstatement of the entire complaint, its brief only addresses the first two causes of action for breach of contract and fraudulent concealment.

with CaribeVision as (1) they undertook to disclose information; (2) their knowledge was superior and the failure to disclose rendered the transaction inherently unfair; and (3) by negotiating to become joint venturers, the parties assumed special duties to each other.

The court found that the commitment letter superseded all prior agreements, and held that the letter's terms limited liability to cases of gross negligence or willful misconduct. It reasoned that L.K. Station's claims that defendants financed a competitor and refused to loan it funds did not allege such tortious conduct as could be found to constitute willful misconduct. The court further noted that any recovery would be limited to direct damages. In dismissing the fraudulent concealment claim, the court found that defendants did not have any duty to disclose, and, in any event, defendants clearly informed plaintiff in the commitment letter that they might be providing financing or other services to parties whose interests may conflict.

We affirm. Even according, as we must on a motion to dismiss, a liberal construction to the pleadings (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), we, nevertheless, conclude that the allegations of the complaint fail to state a cause of action.

Initially, the only parties to the commitment letter are plaintiff L.K. Station and codefendant Tvestments. Concededly, throughout the commitment letter there are indications that parts of the agreement are intended to encompass nonsignatories (e.g. reference to Tvestments "and each of its affiliates" in the indemnification clause, and to Tvestments "or one or more of its affiliates" in the clause advising that financing may be provided to a potential competitor of L.K. Station). The merger clause of the commitment letter, however, only provides that it "sets forth the entire agreement between the parties . . . thereto." Thus, a fair interpretation of the clause leads to the conclusion that its preclusive effect is limited to the claims against Tvestments. Thus, if the other documents can be found to constitute an enforceable contract, the limitation of liability language in the commitment letter will have no effect.

L.K. Station claims that the July letter and the memorandum of understanding constitute enforceable agreements. These documents, however, do not contain some of the essential terms of a loan, such as the interest rate or maturity date, and are thus too uncertain to constitute enforceable agreements. "In determining whether a contract exists, the inquiry centers upon the parties' intent to be bound, i.e., whether there was a 'meeting of the minds' regarding the material terms of the transaction" (*Central Fed. Sav. v National Westminster Bank, U.S.A.*,

176 AD2d 131, 132 [1991]). "[B]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained" (*Joseph Martin, Jr., Delicatessen v Schumacher*, 52 NY2d 105, 109 [1981]).

The July letter indicates that Bulltick was committed to fund the purchase "provided that we achieve a mutually satisfactory asset purchase agreement," and expresses confidence that it can work within an expedited time frame, but makes no firm commitment about the terms of the loan. Likewise, the memorandum of understanding, executed on August 30th, makes clear that, with certain exceptions, it is "a non-binding commitment by the Parties hereto and is submitted for discussion purposes only." Consequently, neither of these documents, individually or in the aggregate, represents a binding agreement.

L.K. Station attempts to invoke the *Crabtree* doctrine (*see Crabtree v Elizabeth Arden Sales Corp.*, 305 NY 48, 53-54 [1953]), and claims that the July letter, the memorandum of understanding, and the commitment letter constitute integrated documents for purposes of demonstrating the existence of an enforceable agreement. This argument runs contrary to L.K. Station's contention that only Tvestments was a party to the commitment letter. Regardless, however, of whether the three documents constituted an integrated transaction encompassing all of the defendants, or Tvestments is deemed to be the only party to the commitment agreement, the limitation of liability clause contained in the commitment letter warrants dismissal of the contract cause of action.

The contract provides that no indemnified party (Tvestments and its affiliates) "shall have any liability (whether in contract, tort or otherwise) . . . except for direct damages (as opposed to special, indirect, consequential or punitive damages . . . )." Loss of profits or business, as well as anticipated savings, fall within the category of damages which are excluded. L.K. Station argues that this clause does not preclude the grant of specific performance.

The Court of Appeals held in *Rubinstein v Rubinstein* (23 NY2d 293 [1968]): "[T]he law is now well settled that a liquidated damages provision will not in and of itself be construed as barring the remedy of specific performance. For there to be a complete bar to equitable relief there must be something more, such as explicit language in the contract that the liquidated damages provision was to be the sole remedy." (*Id.* at 297-298 [citations omitted]; *see also Granite Broadway Dev. LLC v 1711 LLC*, 44 AD3d 594, 594-595 [2007], *lv denied* 10 NY3d 702

[2008]; *Sutton Madison, Inc. v 27 E. 65th St. Owners Corp.*, 8 AD3d 90, 92 [2004].)

In this case, however, the limiting language is broader than it was in *Rubinstein* and its progeny, since it bars relief in "contract, tort or otherwise," except for direct damages resulting from a party's gross negligence or willful misconduct. The provision thus does more than recite the amount of liquidated damages that may be recovered. It pointedly circumscribes the remedies available to requests for direct damages. Consequently, the agreement manifests explicit language which curtails the availability of specific performance as a remedy.

The cause of action for fraudulent concealment should also be dismissed. Initially, L.K. Station maintains that Florida law, which provides recovery for lost profits (*see Nordyne, Inc. v Florida Mobile Home Supply, Inc.*, 625 So 2d 1283, 1287 [Fla Dist Ct App, 1st Dist 1993]), as well as punitive damages (*see Laney v American Equity Inv. Life Ins. Co.*, 243 F Supp 2d 1347, 1354 [MD Fla 2003]), should apply, because it, as well as a number of defendants reside or have offices in Florida, and since many of the events and transactions occurred there.

Choice of law analysis in tort law generally requires giving controlling interest to the "law of the jurisdiction having the greatest interest in resolving the particular issue" (*Cooney v Osgood Mach.*, 81 NY2d 66, 72 [1993]). The heart of the alleged misconduct here is the misleading July disclosure, which occurred in a meeting in New York. Notwithstanding the residence of some of the parties in Florida, since New York has a strong interest in regulating conduct occurring in its borders (*id.; see also Padula v Lilarn Props. Corp.*, 84 NY2d 519, 522 [1994]), we conclude that New York law should apply. In this regard it is also of note that any of the agreements which expressed a choice of law preference (for instance, the nondisclosure agreement and the commitment letter), recited that New York law would apply.

Among the circumstances under which a cause of action for fraudulent concealment may arise is where there has been a misleading partial disclosure (*see Williams v Sidley Austin Brown & Wood, L.L.P.*, 38 AD3d 219, 220 [2007]). The only ground in this complaint upon which to find an actionable claim for partial disclosure is based upon the failure of defendants' representatives in July 2007 to advise of their negotiations to acquire an economic interest in another television station. Under other circumstances, the cause of action would be sustained. The allegations that defendants were covertly negotiating with another party, and that these negotiations

resulted in the acquisition of an interest in CaribeVision, as well as defendants' refusal to lend money to L.K. Station, suggest the existence of factual issues as to whether defendants were liable for fraudulent concealment.

In this case, however, even if there were a duty to disclose, L.K. Station has not demonstrated that it has incurred legally compensable damages, i.e., actual out-of-pocket losses (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421-422 [1996]). Thus, the fraudulent concealment claim cannot be sustained.

Motion seeking leave to enlarge record denied. Concur— Gonzalez, P.J., Tom, Nardelli, Moskowitz and Renwick, JJ. [*See* 20 Misc 3d 1142(A), 2008 NY Slip Op 51827(U).]