**Chirico v 352 Capital ABS Fund LLC**

2025 NY Slip Op 31211(U)

April 9, 2025

Supreme Court, New York County

Docket Number: Index No. 655179/2024

Judge: Anar R. Patel

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 45

-----------------------------------------------------------------------X

JORDAN CHIRICO,

Plaintiff,

- v -

352 CAPITAL ABS FUND LLC, 352 CAPITAL
ABS MASTER FUND LP

Defendants.

-----------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 655179/2024 |
| **MOTION DATE** | 12/13/2024 |
| **MOTION SEQ. NO.** | 004 |

**DECISION + ORDER ON MOTION**

**HON. ANAR RATHOD PATEL**

The following e-filed documents, listed by NYSCEF document number (Motion 004) 124–128, 135, 137 were read on this <u>MOTION TO DISMISS</u>.

Defendants 3|5|2 Capital ABS Fund LLC (the "U.S. Fund") and 3|5|2 Capital ABS Master Fund LP (the "Master Fund") (collectively, "Defendants" or the "Funds") move to dismiss Plaintiff Jordan Chirico's ("Plaintiff" or "Chirico") Amended Complaint in its entirety pursuant to CPLR §§ 3211(a)(1), (3), (5), and (7).

This case arises from the efforts of Chirico, a former employee of Leucadia Asset Management LLC ("LAM") (formerly known as Jefferies Investment Advisors LLC) to secure advancement of legal fees and costs incurred in connection with (1) an investigation by the United States Attorney's Office for the Southern District of New York ("USAO") (the "Investigation"), and (2) a civil action filed in the Southern District of New York (the "SDNY Action") against Chirico and other defendants under the case caption *3|5|2 Capital GP LLC v. Wear et al.*, No. 1:24-CV-05102.  NYSCEF Doc. No. 108 ("Am. Compl.") at ¶¶ 1–7, 128–36.

Plaintiff's Amended Complaint alleges five causes of action seeking to secure said advancement rights: (1) declaratory judgment against the Master Fund that Chirico is entitled to advancements for all fees and expenses incurred in connection with the Investigation, SDNY Action, Delaware Proceeding, and the instant New York proceeding; (2) breach of contract against the Master Fund for failing to reimburse and advance Chirico fees and expenses in connection with the proceedings; (3) declaratory judgment against the U.S. Fund that Chirico is entitled to advancements for all fees and expenses incurred in connection with the proceedings; (4) breach of contract against the U.S. Fund for failing to reimburse and advance Chirico fees and expenses in connection with the proceedings; and (5) fees and expenses incurred in connection with enforcing Chirico's advancement rights. *Id*. at ¶¶ 177–243.

Relevant to the instant proceedings is Plaintiff's prior action commenced on July 25, 2024, in the Delaware Chancery Court seeking advancement and indemnification against the U.S. Fund under the caption *Jordan Chirico v. 352 Capital ABS Fund LLC*, No. 2024-0796-NAC (Del. Ch.) (the "Delaware Proceeding"). *Id.* at ¶¶ 143–44. The U.S. Fund moved to dismiss that case, arguing that the forum selection clause in Plaintiff's employment agreement provides that any action related to Chirico's employment shall be brought in a New York court. *Id.* at ¶ 145. On September 4, 2024, the Delaware Court of Chancery granted the U.S. Fund's motion to dismiss based upon the forum selection clause in the employment agreement. *Id.* at ¶¶ 146–47; *see also* NYSCEF Doc. No. 56 ("Del. Tr.") at 74:2–10 ("the Fund's interests in connection with Mr. Chirico's claim for Indemnification and Advancement are directly and entirely predicated upon Leucadia's conduct in entering into the Employment Agreement with Mr. Chirico as opposed to the Fund's own conduct").

Thereafter, on September 30, 2024, Plaintiff filed the Summons and original Complaint in this action demanding indemnification and advancement. NYSCEF Doc. No. 1 (Summons and Compl.). On October 4, Plaintiff filed an Order to Show Cause before this Court seeking a Preliminary Injunction for immediate advancement. NYSCEF Doc. No. 4 (Mot. Seq. No. 001). On November 13, the Court denied Plaintiff's application for a preliminary injunction. NYSCEF Doc. Nos. 105 (11/15/24 Decision and Order); 129 (11/13/24 Tr.). The Court determined that, for purposes of determining whether to grant the injunctive relief sought under CPLR § 6301, (1) Section II.F. of the employment agreement applies to the Investigation; and (2) Section 10.2(b) of the agreements upon which Plaintiff relies provides for exceptions such as where the underlying claims arise out of an internal dispute among the "Jeffries Parties" as in the SDNY Action. NYSCEF Doc. No. 129.

Before the Court is Defendants' Motion to Dismiss the Amended Complaint in its entirety pursuant to CPLR §§ 3211(a)(1), (3), (5), and (7). NYSCEF Doc. Nos. 124–128 (Mot. Seq. No. 004). Defendants argue that (1) the specific provision of the agreements upon which Chirico relies explicitly precludes him from entitlement to advancement because he is a former employee and, separately, because the underlying claims in the SDNY Action involve an internal dispute between and among Chirico, LAM, and other non-parties to this action—all related to Chirico's conduct while employed by LAM; (2) Chirico does not allege that he promptly notified the Funds with reasonable particularity as required by the procedural requirements of the agreements; (3) Chirico does not allege that he has attempted to obtain advancements from alternative sources as required under the agreements; and (4) Chirico's declaratory judgment claims are duplicative of the breach of contract claims. NYSCEF Doc. No. 128 (Def. Mem. of Law).

For the reasons as set forth below, Defendants' Motion to Dismiss the Amended Complaint is granted, and the Amended Complaint is dismissed in its entirety with prejudice. Plaintiff lobs a litany of unavailing arguments on this motion—similar to the arguments seeking injunctive relief—that ask the Court to engage in another round of verbal contortions to circumvent the plain language of the agreements that govern Plaintiff's entitlement to advancements in connection with the Investigation and the SDNY Action.

[* 2]

# I.    Relevant Factual[1] and Procedural History

On May 28, 2020, Chirico entered into an employment agreement for the position of Managing Director and Portfolio Manager with LAM, a wholly-owned subsidiary of Jefferies Financial Group, Inc.  Am. Compl. at ¶¶ 2, 27–29; *see also* NYSCEF Doc. No. 113 (the "Employment Agreement").  LAM employed Plaintiff from May 29, 2020 through June 5, 2024, the date of his termination.  Am. Compl. at ¶¶ 2, 60.  During his employment period, Plaintiff managed an asset-backed investment fund created by LAM on or about January 4, 2021.  *Id.* at ¶¶ 59–61.  The fund operates under a master-feeder structure.  *Id.* at ¶ 61.  LAM structured the Master Fund (Defendant 3|5|2 Capital ABS Master Fund LP) as a limited partnership domiciled in the Cayman Islands and the U.S. Fund (Defendant 3|5|2 Capital ABS Fund LLC) as a limited liability company domiciled in Delaware.  *Id.*  LAM also created a non-U.S. Fund as a limited partnership, domiciled in the Cayman Islands, which is a non-party to this action.  *Id.*  LAM subsequently created a special purpose entity, 3|5|2 Capital GP LLC, to act as General Partner to the investment funds.  *Id.* at ¶ 3.

Plaintiff's actions, on behalf of Defendants, during his employment with LAM are the subject, in part, of both the Investigation and the SDNY Action.  *Id.* at ¶¶ 128–141.  In sum, the proceedings involve allegations that Chirico, as portfolio manager, unilaterally acquired bonds issued by Water Station Management ("Water Station") on behalf of Defendants despite his awareness that the company was engaged in fraud.

## A.  DOJ Investigation

On July 1, 2024, the USAO commenced an investigation into Water Station, whose bonds the Master Fund had purchased.  Am. Compl. at ¶ 128.  On July 18, the USAO served Chirico with a grand jury subpoena seeking documents and testimony in connection with the investigation—specifically in regard to Chirico's role as Managing Director and Portfolio Manager at LAM and his involvement in the Master Fund's purchase of the Water Station bonds.  *Id.* at ¶ 129.  In complying with the grand jury subpoena, Chirico alleges that he has incurred substantial legal fees and is entitled to have these fees "immediately paid or reimbursed by the Funds" under Section 10.2 of the Master Fund's Limited Partnership Agreement ("LPA") and the U.S. Fund's Operating Agreement ("OA") (collectively, "Agreements").  *Id.* at ¶ 132.  Defendants dispute Chirico's entitlement to advancement of legal fees in this action and have refused to advance the requested fees and expenses.  *Id.* at ¶ 143.

## B.  SDNY Action

The SDNY Action alleges that Chirico, along with others, engaged in a "massive fraud" against Defendants (through their related entities) and their investors by entering into a common enterprise to perpetrate the fraudulent scheme.  NYSCEF Doc. No. 95 (SDNY First Am. Compl.

---

[1] The facts are taken from the Amended Complaint and the documentary evidence submitted by the parties, including the exhibits attached to the Amended Complaint, NYSCEF Doc. Nos. 108–115, and are accepted as true for the purposes of this Motion to Dismiss.

[* 3]

("SDNY FAC")). Plaintiffs in the SDNY Action allege the defendants' fraudulent actions resulted in over $100 million in misappropriated or diverted funds. *Id.* at ¶ 1

On July 3, 2024, 3|5|2 Capital GP LLC, acting as the General Partner, commenced a lawsuit against multiple defendants, including Chirico, alleging fraud and other tortious actions against the Master Fund. *Am. Compl.* at ¶¶ 133–34; *see also* NYSCEF Doc. No. 114 ("SDNY Compl."). On October 28, Plaintiffs filed the First Amended Complaint, which names Chirico in seven counts, including racketeering, aiding and abetting conspiracy to commit fraud, breach of fiduciary duty, breach of contract, gross negligence, faithless servant, and fraudulent transfers. SDNY FAC at ¶¶ 137–39; Am. Compl. at ¶¶ 138–39. The SDNY Action alleges that, during his employment with LAM, Chirico, *inter alia*, accepted bribes and other fraudulent payments from Water Station while continuing to make fund investments into Water Station bonds with full knowledge of the underlying fraudulent activity. SDNY FAC at ¶¶ 117–23, 260–64; Am. Compl. at ¶¶ 134–36. Chirico made these investments without disclosing that he, his wife, and close family members had previously invested $7 million in Water Station. SDNY FAC at ¶¶ 5, 120, 186, 347.

Chirico alleges that he has incurred substantial legal fees in connection with the SDNY Action and is entitled to have these fees "paid or reimbursed by the Funds" under the Section 10.2(b) of the Agreements. Am. Compl. at ¶ 141.

## C. Relevant Agreements

Chirico's indemnification and advancement rights hinge on this Court's interpretation of certain contractual provisions in (1) the LAM Employment Agreement, (2) the Master Fund Limited Partner Agreement, and (3) the U.S. Fund Operating Agreement.

The LPA, dated October 1, 2021, and the OA, dated January 1, 2023, contain nearly identical wording, including with respect to the provisions at issue here. Am. Compl. at ¶ 94; *see also* NYSCEF Doc. No. 109 ("LPA"); NYSCEF Doc. No. 111 ("OA"). The LPA governs the relationship between LAM and the Master Fund's limited partners who invested through the U.S. Fund. Am. Compl. at ¶ 79. The Operating Agreement governs the relationship between LAM and members of the U.S. Fund. *Id.* at ¶ 93.

### 1) Employment Agreement

As relates to the Investigation, Defendants argue that, pursuant to the Employment Agreement between Chirico and LAM, Chirico expressly waived any rights to advancement of legal fees and expenses in any government or regulatory investigation from the Funds, as "Jeffries Companies." Section II.F. of the LAM Employment Agreement ("Exclusions") provides in relevant part:

> "Nothing in this Agreement shall prevent you (or your attorney) from lawfully … participating in any investigation or proceeding conducted by the EEOC, the NLRB, the Financial Industry Regulatory Authority ('FINRA'), the Securities and Exchange Commission or similar federal, state or local agencies (collectively, 'Government Agencies or Regulators'); … communicating or cooperating with, or providing relevant information

to, or testifying before, or otherwise assisting in an investigation or proceeding by, Government Agencies or Regulators … To the extent permissible by law and except as otherwise set forth herein, you *release and waive any right to, and agree not to seek any, personal or monetary relief from the Jefferies Companies based upon any such investigation or proceeding.*"

NYSCEF Doc. No. 113 (emphasis added); Am Compl. ¶¶ 45, 47. The Employment Agreement at Section II.D. defines "Jeffries Companies" by reference to the Employee Handbook dated September 2016 ("Handbook"); Jeffries Companies is "the business of Jefferies [Group LLC], its parent [Jeffries Financial Group, Inc.], subsidiaries or affiliates." NYSCEF Doc. No. 54 (Emp. Handbook) at § 2.2.

> 2) The Fund Agreements

Defendants contend that Chirico is not entitled to advancement of legal fees and expenses under the plain language of the Agreements for the SDNY Action for four independent reasons: (1) Chirico is a former employee, and therefore is not a "Jeffries Party" or an "Indemnitee" entitled to advancement under the relevant provisions; (2) even if Chirico is an Indemnitee, the SDNY Action arises from an "internal dispute among the Jeffries Parties"—here, Chirico and LAM—and therefore any claims for advancement are precluded; (3) the Amended Complaint does not allege that Chirico provided "prompt" notification to the Funds as required under the Agreements; and (4) any entitlement to advancement obligations is triggered only "after giving effect" to monies received by an Indemnitee from alternative sources (*e.g.*, insurance policies). NYSCEF Doc. No. 128 at 7–8. The relevant provisions are further described below.

- Section 10.2(a) defines the scope of indemnification: "the Fund[s] shall indemnify each Jefferies Party … from and against any and all Losses … ." LPA at 32; OA at 36. "'Jefferies Party' means the General Partner, the Investment Manager, any Affiliate of the General Partner or the Investment Manager and any member, partner, shareholder, director, officer, employee or agent of the General Partner, the Investment Manager or any such Affiliate." LPA at 5; *see* OA at 5. Defendants point out that Jefferies Party is defined using the present tense and does not reference "former" employees. NYSCEF Doc. No. 128 at 22

- Section 10.2(b) states that "indemnification-related expenses shall not be advanced to an Indemnitee if … the underlying claims arise out of an internal dispute among the Jefferies Parties." LPA at 33; OA at 36. Section 10.2(b) further states that indemnification shall occur "upon receipt by the Fund of … a written affirmation by such Indemnitee of such Indemnitee's good faith belief that the standard of conduct necessary for indemnification by the Fund … has been met." *Id*. Defendants argue that advancement for the SDNY Action, which arises from a dispute concerning Chirico's conduct while employed by LAM, is precluded under the clear language of Section 10.2(b). NYSCEF Doc. No. 128 at 10.

- Section 10.2(c) states that "[t]he indemnification provided … shall be in addition to any other rights to which an Indemnitee may be entitled under any agreement … ." LPA at 33;

[* 5]

OA at 36. Although pre-existing rights will not be affected, Section 10.2(c) "shall not be construed to entitle any Indemnitee to receive any [indemnification] amount … in respect of any Losses paid or incurred by such Indemnitee to the extent that, after giving effect to the receipt of such amount and the receipt by such Indemnitee of any other payments in respect of such Losses, from whatever source or sources, such Indemnitee shall have recovered an aggregate amount in excess of such Losses." *Id.*

- Section 10.3 governs the notification process for indemnification claims. LPA at 34; OA at 37. The provision states that one seeking indemnification "shall promptly give Notification to the Fund describing such claim for indemnification, the amount thereof, if known, and the method of computation, all with reasonable particularity … ." *Id.* The provision further states that "the omission by such Indemnitee to give Notification as provided herein shall not relieve the Fund of its Indemnification Obligation … except to the extent that the Fund is materially damaged as a result of such failure to give Notification." *Id.* Defendants argue that Chirico failed to comply with these notification requirements. NYSCEF Doc. No. 128 at 23–24. Chirico alleges that he did tender written notice of his entitlement to advancement of legal fees, Am. Compl. at ¶ 142, and—even if he did fail to give adequate notice—the Funds are not relieved of their indemnification obligations unless "materially damaged" by that failure. NYSCEF Doc. No. 135 (Pl's Opp'n) at 10–11.

## II.     Legal Discussion[2]

"A party may move for judgment dismissing one or more causes of action asserted against him on the ground that a defense is founded upon documentary evidence." CPLR § 3211(a)(1). Documentary evidence, "such as an unambiguous contract," must "'conclusively establish[] a defense to the asserted claims as a matter of law.'" *Behler v. Kai-Shing Tao*, -- N.E.3d --, 2025 WL 477888, at *3 (Feb. 13, 2025) (citing *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 571 (2005)). A motion to dismiss under CPLR § 3211(a)(1) "'may be appropriately granted only where the documentary evidence utterly refutes [the] plaintiff's factual allegations, conclusively establishing a defense as a matter of law.'" *Farage v. Associated Ins. Mgt. Corp.*, -- N.E.3d --, 2024 WL 4884829, at *3 (Nov. 26, 2024) (citing *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2D 314, 326 (2002)).

On a motion to dismiss brought pursuant to CPLR § 3211(a)(7), "pleadings are to be afforded a liberal construction, allegations are taken as true, the plaintiff is afforded every possible inference, and a determination is made only as to whether the facts as alleged fit within any cognizable legal theory." *CSC Holdings, LLC v. Samsung Elecs. Am., Inc.*, 146 N.Y.S.3d 17, 18 (2021) (internal citations omitted). Nevertheless, "[d]ismissal of the complaint is warranted if the [movant] fails to assert facts in support of an element of the claim, or if the factual allegations and inferences drawn from them do not allow for an enforceable right of recovery." *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1162 (N.Y. 2017) (internal citations omitted). The test is "whether the proponent of the pleading has a cause of action, not whether he has stated one."

---

[2] While Defendants' Notice of Motion states that they move to dismiss the Amended Complaint pursuant to CPLR §§ 3211(a)(1), (3), (5), and (7), Defendants' Memorandum of Law does not proffer arguments for dismissal under CPLR §§ 3211(a)(3), and (5), and therefore, the Court declines to conduct an analysis pursuant to those grounds.

**655179/2024   CHIRICO, JORDAN vs. 352 CAPITAL ABS FUND LLC ET AL**                    **Page 6 of 12**
**Motion No.   004**

[* 6]

*Leon v. Martinez*, 84 N.Y.2d 83, 87–88 (1994). Courts will grant a motion to dismiss where the plaintiff states a cognizable cause of action but fails to assert a material fact necessary to meet an element of the claim. *See, e.g., Arnon Ltd v. Beierwaltes*, 3 N.Y.S.3d 31, 33 (1st Dept. 2015).

Plaintiff relies on a series of cases for the propositions that Delaware law[3] requires (1) advancement unless the relevant agreement specifically states otherwise, *see Int'l Rail Partners LLC v. Am. Rail Partners, LLC*, 2020 WL 6882105, at *8 (Del. Ch. Nov. 24, 2020), and (2) the application of *contra proferentem*—acceptance of the indemnitee's interpretation of the advancement rights "unless that interpretation is unreasonable," *Stockman v. Heartland Indus. Partners, L.P.*, 2009 WL 2096213 at *5–8 (Del. Ch. June 18, 2002). NYSCEF Doc. No. 135 at 13. However, Plaintiff's "accurate recitation of Delaware law fails to acknowledge the important counterpoint to these broad rights: that Delaware law allows entities to limit the scope of advancement and indemnification rights as well." *Grace v. Ashbridge LLC*, No. CIV.A. 8348-VCN, 2013 WL 6869936, at *7 (Del. Ch. Dec. 31, 2013).

### A. The Amended Complaint Fails to Allege Advancement Rights in the Investigation

Defendants argue that Plaintiff has waived any claim to advancement in connection with the Investigation pursuant to Section II.F. of the Employment Agreement whereby Chirico "release[d] and waive[d] any right to, and agree[d] not to seek any, personal or monetary relief from the Jefferies Companies based upon any such investigation or proceeding." NYSCEF Doc. No. 113 at § II.F.; NYSCEF Doc. No. 128 at 18–21. An investigation or proceeding as referenced therein involves "any investigation or proceeding conducted by the EEOC, the NLRB, the Financial Industry Regulatory Authority ('FINRA'), the Securities and Exchange Commission or similar federal, state or local agencies (collectively, 'Government Agencies or Regulators')." "Jeffries Companies" is defined in the Jeffries Employee Handbook, effective at the time the Employment Agreement was executed, to include subsidiaries and affiliates of Jeffries Group LLC. NYSCEF Doc. No. 54 at § 2.2.

Here, the Investigation by the U.S. Attorney for the Southern District of New York squarely falls within the ambit of a federal investigation by "Government Agencies or Regulators." *See Wilburn v. Nguyen*, No. 23-CV-4082, 2023 WL 4163510, at *2 (E.D.N.Y. June 23, 2023) ("The USAO is division of the United States Department of Justice, a federal agency."). Further, the Funds are "Jeffries Companies" because it is undisputed that they are managed and controlled by LAM, "a wholly owned subsidiary of Jeffries Financial Group, Inc.," the successor to Jeffries Group LLC. Am. Compl. ¶¶ 27, 61, 64. Defendants direct the Court to the meaning of "affiliate," as defined in the Agreements, as "any Person that directly or indirectly through one or more intermediaries Controls, is Controlled by, or is under common Control with, such specified Person." LPA at § 1; OA at § 1; *see also* 17 C.F.R. § 230.405 (defining "affiliate" under the Securities Act of 1933). This definition is consistent with that of Black's Law Dictionary (12th ed. 2024) where an affiliate is "a corporation that is related to another corporation by shareholding, or other means of control; a subsidiary, parent, or sibling corporation." Accordingly, the

---

[3] The parties do not dispute that Sections 10.2(b) of the Agreements, the relevant provision as to advancement rights, are identical but for the governing law—the OA is governed by Delaware law and the LPA is governed by Caymans Island Law. Accordingly, both parties generally rely on Delaware law in their briefing. *See* NYSCEF Doc. Nos. 128 at n. 8; 135 at n. 8.

unambiguous terms of the Agreements establish that the Funds, which are controlled and managed by LAM, are "affiliates" of Jeffries Group LLC and therefore "Jeffries Companies."

Plaintiff advances ten different arguments in rebuttal including, *inter alia*, that he does not seek advancement under the Employment Agreement, which is necessarily superseded by later-made agreements—the LPA and OA; that the Funds do not have standing to enforce the Employment Agreement; and that any purported waiver and release of advancement rights established in the Employment Agreement was extinguished upon his termination. Each of these arguments is unavailing. NYSCEF Doc. No. 135 at 14–21.

Plaintiff relies on *Tafeen v. Homestore*, 2004 WL 556733, at *5 (Del. Ch. Mar. 22, 2024), *aff'd* 888 A.2d 204 (Del. 2005), for the proposition that this Court should disregard the Employment Agreement when adjudicating the advancement claim because "those rights were 'not dependent upon [the] employment contract,' and [ ] any defense based on the employment contract could only be raised later in the context of indemnification." NYSCEF Doc. No. 135 at 19. The facts at issue in *Tafeen* are not analogous to those present here and render Plaintiff's argument as unpersuasive. In *Tafeen*, the Court of Chancery addressed—and rejected—the argument that an employee's alleged fraudulent inducement of his employment contract prevented him receiving advancement provided under the company's bylaws. Instead, the court determined that the "peripheral" issue of whether defendant was fraudulently induced into entering the employment contract was not an appropriate consideration in advancement proceedings. Here, it is undisputed that the Employment Agreement is a valid contract and there is no allegation before this Court that some improper conduct related to the Employment Agreement (such as fraudulent inducement) precludes Chirico from entitlement to advancement rights that are otherwise available to him. Additionally, unlike *Tafeen*, Defendants here credibly argue that the Employment Agreement contains language that directly affects Chirico's advancement rights.

Plaintiff's argument that the advancement rights in the LPA and OA—to which he is not a party—supersede the waiver clause of the Employment Agreement also fails because (1) the LPA and OA make no reference to the Employment Agreement and (2) Chirico is not a party or—at present—an intended third-party beneficiary of the Agreements.[4] Accordingly, the merger clause found in the LPA and OA cannot have a preclusive effect against the Funds, as parties to the Agreements. *See L.K. Sta. Grp., LLC v. Quantek Media, LLC*, 62 A.D.3d 487, 491 (1st Dept. 2009). The Court further observes that Plaintiff offers no legal authority in support of this argument. NYSCEF Doc. No. 135 at 20.

Next, Plaintiff argues that the Funds do not have standing to enforce the Employment Agreement, which was entered into by and between Chirico and LAM. *Id*. This argument is directly undercut by the fact that "Jeffries Companies" are explicitly identified as beneficiaries under Section II.F. of the Employment Agreement, and the Court has determined that the Funds are Jeffries Companies. Further, to the extent that the Funds are not explicitly named and/or signatories to the Employment Agreement, Plaintiff concedes that, under New York law, the "identity of the third-party beneficiary does not need to be stated in the contract." *Bancorp. Servs., LLC v. Am. Gen. Life. Ins. Co.*, 2016 WL 4916969, at *7 (S.D.N.Y. Feb. 11, 2016). And while

---

[4] As discussed *infra* at 10, the Court determines that Chirico, as a former employee, is not an "Indemnitee" as defined under the Agreements and therefore not a third-party beneficiary. *See* NSYCEF Doc. No. 135 at n. 8.

Bancorp did hold that "[t]o the extent that there is a genuine issue regarding the parties' intent to benefit another by the contract, the question of intent is an issue of fact to be tried.," *id*., here, there is no genuine issue of fact regarding the parties' intent for at least two reasons.

First, as discussed *supra*, the Employment Agreement specifically identifies "Jeffries Companies." Second, relying upon Vice Chancellor Cook's decision in the Delaware Proceeding, the Court determines that the Funds can enforce the terms of the Employment Agreement. Del. Tr. at 71:8–74:7 (*citing* to *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013); *Cognizant Tech. Sols. Corp. v. Bohrer PLLC*, No. 21-CV-5340, 2022 WL 1720319, at *4 (S.D.N.Y. May 27, 2022)). Vice Chancellor Cook reasoned that the "closely related" doctrine applies such that the Funds' relationship with Chirico would also be governed by the Employment Agreement:

> When Mr. Chirico executed an employment agreement with Leucadia to work as a portfolio manager, it was foreseeable that subsequent entities would be formed in the overall investment structure—such as the [U.S.] Fund itself—and that the relationship between Mr. Chirico and these entities would also be governed by his Employment Agreement with Leucadia … it is only on account of the Employment Agreement with Leucadia that Mr. Chirico served as the Fund's portfolio manager—and, more broadly, had any sort of relationship or contact with the Fund.

Del. Tr. 72:22–73:12. At bottom, it was foreseeable to both Chirico and LAM that entities, such as the Funds, would be formed for LAM to manage. Such was the nature of his employment position with LAM.

Finally, Plaintiff argues that any rights and obligations under the Employment Agreement are extinguished upon Chirico's termination on June 5, 2024, and there is no indication in the Employment Agreement that said rights and obligations were intended to survive termination. NYSCEF Doc. No. 135 at 21–22. Relying on *Spanish Broadcasting Sys., Inc. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings Inc.)*, No. 16-CV-0487 (CM), 2016 WL 7377272, at *3 (S.D.N.Y. Dec. 13, 2016), Defendants argue that the waiver at Section II.F. of the Employment is styled in the present tense and therefore, survives Chirico's termination. NYSCEF Doc. No. 128 at 21. In *Spanish Broadcasting*, Judge McMahon distinguished between an "'obligation'" [which] indicate[s] that it is a future or continuing duty to act or not act, while a waiver of claims (like the Damages Waiver at issue) is an intentional or voluntary 'relinquishment or abandonment' of a then-existing right." *Id*. She determined that because the waiver was not styled as a future obligation, but instead adopts the present tense, the waiver remains in force and was not rescinded by the termination of the underlying agreement. *Id*. Plaintiff counters this argument by stating that the waiver at issue in *Spanish Broadcasting* used the words "irrevocable and unconditional." NYSCEF Doc. No. 135 at 22. While Plaintiff's observation is true, it does not change this Court's interpretation, in line with Defendants', that the court in *Spanish Broadcasting* found the use of the present tense to be determinative.

Accordingly, the Court determines that the Employment Agreement—which is attached to the Amended Complaint—applies to Plaintiff's claim for advancement of legal fees in connection

[* 9]

with the Investigation and directly refutes Plaintiff's allegations in the Amended Complaint that he is entitled to advancement in the Investigation.

### B. The Amended Complaint Fails to Allege Advancement Rights in the SDNY Action

It is undisputed that the OA, which controls the U.S. Fund, and the LPA, which controls the Master Fund, provide advancement rights to an Indemnitee under Section 10.2(b). The Agreements define Indemnitee at Section 10.2(a) as "each Jeffries Party." LPA at 32; OA at 36. "Jeffries Party" is defined at Section 1 as "any … employee or agent of the General Partner, the Investment Manager or any such Affiliate." LPA at 5; OA at 5. Accordingly, any employee of LAM is a Jeffries Party entitled to advancement and indemnification. Further, the parties do not dispute that Sections 10.2(b) of the Agreements, the relevant provision as to advancement rights, are identical but for the governing law—the OA is governed by Delaware law and the LPA is governed by Caymans Island Law. *See* NYSCEF Doc. Nos. 128 at n. 8; 135 at n. 8. The parties also do not dispute that Section 10.2(b) entitles only an Indemnitee to advancements rights, and then, subject to certain limitations as enumerated therein. *See* LPA at 33; OA at 36.

Defendants argue that the Amended Complaint does not adequately allege advancement rights in the SDNY Action and that any allegations are directly refuted by the language of the Agreements because (1) Chirico is not an "Indemnitee" as defined in the Agreements, (2) any advancements rights in the SDNY Action are explicitly excluded under the "Internal Dispute" provision of Section 10.2(b), and (3) Chirico has not complied with certain requirements and conditions precedent to seek advancement. NYSCEF Doc. No. 128 at 7–8.

Under Section 10.2, only Indemnitees are entitled to indemnification and advancement of indemnification-related expenses.[5] The definition of "Indemnitee" does not include "former" employees. Elsewhere in the Agreements, the parties specifically contracted to include "former" Members. *See* §§ 9.3 (Expense Accruals); 13.4 (Distribution of Property and Proceeds of Sale Thereof). Such inclusions indicate that the parties intended to cover former members, in addition to current members, by using the adjective "former". Further, "[w]hen the words 'officers' and 'directors' are not qualified by the adjective 'former' (or a similar adjective), Delaware courts have interpreted those words to refer to current officers and current directors." *Charney v. Am. Apparel, Inc.*, No. CV 11098-CB, 2015 WL 5313769, at \*7 (Del. Ch. Sept. 11, 2015). Here, the absence of the adjective "former"—especially where the parties had elsewhere qualified members as "former"—leads the Court to conclude that Chirico, who was a former employee of LAM at the time he sought advancement, is not a "Jeffries Party" and therefore, not an "Indemnitee."

Turning to the Internal Dispute provision, the Court determines that "the underlying claims" in the SDNY Action "arise out of an internal dispute among the Jeffries Parties" pursuant to Section 10.2(b). Therefore, even if Chirico were an Indemnitee, he would be precluded from recovering any advancement rights related to the SDNY Action. The Amended Complaint concedes that the allegations against Chirico are premised on his "role as portfolio manager and his involvement in the Master Fund's purchase of bonds," and "the allegations against Mr. Chirico in the Civil Proceeding relate, directly or indirectly, to Mr. Chirico's alleged acts or omissions in

---

[5] As Plaintiff states, the Agreements do not distinguish between indemnification and advancement rights. NYSCEF Doc. No. 135 at 9.

connection with the operation of the Funds." Am. Comp. ¶¶ 136, 141. The SDNY Action involves, in relevant part, a dispute between LAM—a Jefferies Party and a plaintiff in the SDNY Action, and Chirico—a former employee of LAM and a named defendant in the SDNY Action. The SDNY FAC asserts claims against Chirico—whose name appears 326 times in the complaint—for racketeering, aiding and abetting conspiracy to commit fraud, actual and constructive fraudulent transfer, breach of contract, breach of fiduciary duty, gross negligence, and acting as a faithless servant. SDNY FAC ¶¶ 389–92, 471–90.

By way of example, the SDNY FAC alleges the following: "Chirico also used C3 Capital as a mechanism to conceal from the 352 Fund both his personal investment in the Water Station Management franchises and his ongoing involvement in the fraud"; "[t]he agreement between Chirico and Wear was procured by the fraud of Wear and Water Station Management, and Chirico's complete abandonment of the interests of the 352 Fund"; "the transfers were made to or for the benefit of Wear and the Wear Entities, Chirico, or to franchisees and "investors" in his ongoing fraudulent scheme"; "Chirico failed to comply with his duties and LAM's policies and procedures by failing disclose [*sic*] his investments in Water Station Management through C3 Capital"; "Chirico breached the duty of care that he owed to the 352 Fund and LAM." SDNY FAC ¶¶ 376, 425, 443, 473, 480, 487.

Plaintiff's efforts to parse through each of the counts asserted in the SDNY FAC to demonstrate that the disputes are not among "Jeffries Parties" cannot overcome the fact that the underlying claims arise from Chirico's "internal corporate conduct" while employed by LAM—that Chirico managed the Funds through LAM and that LAM is a party to the SDNY Action.[6] *See Salzberg v. Sciabacucchi*, 227 A.3d 102, 123 (Del. 2020) ("claims are 'internal' in the sense that they arise from internal corporate conduct"). Here, Section 10.2(b) is unambiguous that, where the "the underlying claims" (*i.e.*, not the proceedings) "arise out of an internal dispute among the Jefferies Parties," the exclusion applies. "[C]ourts will not bend contract language to read meaning into the words that the parties obviously did not intend." *Majkowski v. Am. Imaging Mgmt. Servs.*, LLC, 913 A.2d 572, 588 (Del. Ch. 2006) (determining that "hold harmless" plainly does not mean "indemnify"); *see also, Grace*, 2013 WL 6869936, at *5–6 (dismissing a claim for advancement where the "plain language" of the agreement requires a showing that advancement retroactively applies to predecessor entities or affiliates).

Because the Court determines that the plain language of the Agreement is unambiguous as to the definition of "Indemnitee" and as to the exclusion of advancement rights under the Internal Dispute provision, and that these provisions, as applied to Chirico, preclude him from obtaining

---

[6] This Court's determination is consistent with that of the Delaware Chancery Court, which observed that it was Chirico's investment decisions, while employed as a portfolio manager at LAM, that give rise to his request for advancement. Vice Chancellor Cook asked whether the matters that "concern the request for advancement … implicate Mr. Chirico's capacity or role as a managing director of the asset-backed securities division of [LAM]." Del Tr. at 60:24–61:4. Plaintiff's counsel acknowledged that Chirico's role as portfolio manager for the U.S. Funds implicated investment decisions he made and for which he now seeks advancement, to which Vice Chancellor Cook responded, "I mean, that's kind of the whole ball of wax here. It's what underlies the request for advancement, correct?" *Id.* 62:5–7; 14–21.

advancement, the Court need not address whether Chirico has satisfied the requirements to receive advancement under Section 10.3.

## III.    Conclusion

The Court has considered the parties' remaining arguments and finds them unpersuasive and lacking in merit.  Upon the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss by Defendants 3|5|2 Capital ABS Fund LLC and 3|5|2 Capital ABS Master Fund LP is GRANTED under CPLR §§ 3211(a)(1) and (a)(7), and Plaintiff's Amended Complaint is dismissed in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment accordingly in favor of Defendants.

The foregoing constitutes the Decision and Order of the Court.

20250409165220ARPATEL505FE07C0D674E3D88D5632283BC687F

| | |
|---|---|
| **4/9/2025** | |
| **DATE** | **ANAR R. PATEL, A.J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |